UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA     )
                            )       Case No. 1:05-cr-149
vs.                      )
                            )
CORNELL P. GUNTER, also known as  )
PERRY GUNTER              )       COLLIER/CARTER

REPORT AND RECOMMENDATION

I. Introduction

Defendant Cornell Gunter's Motion to Suppress (Doc. 15) is pending before the

undersigned Magistrate Judge having been referred by the District Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant seeks to suppress evidence

found during a search of his residence on September 28, 2005, pursuant to a search warrant.

Defendant also requests an evidentiary hearing "so a record can be developed to determine the

constitutionality of the search" (Defendant's Mot. to Suppress at 2). For the reasons set forth,

the undersigned Magistrate Judge RECOMMENDS defendant's motion to suppress be DENIED.

II. Relevant Facts

On September 28, 2005, the members of the Tennessee Bureau of Investigation (TBI),

the 10th Judicial Drug Task Force, and the McMinn County Sheriff's Office executed a search

warrant for 1484 County Road 250 in Niota, Tennessee. Narcotics, cash, and firearms were

found in the house. Drug paraphernalia was found in a 1998 Cadillac DeVille outside the

residence. Prior to execution of the search warrant, TBI Special Agent Brian Freeman prepared

and submitted on September 28, 2005, an affidavit to McMinn County Criminal Court Judge

1

Bebb to obtain the search warrant for defendant's residence. The warrant affidavit provides a great deal of information including the following especially relevant to this motion:

Agent Freeman has been employed by the TBI for nine years in narcotics investigations. (Freeman Affidavit at ¶ 1.) Prior to his employment with the TBI, he was employed by the 10th Judicial Drug Task Force. *Id.* He has conducted over 100 investigations into drug trafficking, many of which have lead to arrests and convictions. *Id.* He is familiar with the operations, terminology and patterns of behavior of persons involved in trafficking illegal drugs. *Id.* Individuals involved in drug trafficking often use their residences as places to store illegal drugs, cash, firearms, drug paraphernalia, and drug trafficking paraphernalia. *Id.* at ¶ ¶ 1A-1C, 1L-1H.

In September 2005, a confidential source (CS) told Freeman that he/she might be able to purchase drugs from the defendant. *Id.* at ¶ 4. On September 22, 2005, Freeman and other agents met with the CS and monitored the CS as he/she telephoned the defendant and arranged to purchase cocaine from the defendant. *Id.* at ¶ 5. That same day, the CS made a controlled buy of cocaine from the defendant. *Id.* Immediately prior to the buy, agents checked the CS's person and his/her vehicle to make sure he/she had no drugs. *Id.* at ¶ 6. The CS was given money to purchase the drugs. *Id.* Agents followed the CS to Harper Johnson Road in Athens, Tennessee where the CS purchased two ounces of cocaine from the defendant. *Id.* The CS was wearing a wire at the time, and agents listened to the transaction as it occurred via the covert transmitter. *Id.* After the buy, Freeman and another agent met with the CS at a debriefing location, and the CS released two ounces of cocaine to them. *Id.* The agents again searched the CS' person and vehicle for drugs and found none. *Id.* As of September 26, 2005, the Tennessee Department of Safety records showed the defendant's address as 1484 County Road 250, Niota, Tennessee. *Id.*

¶ 7. Two Cadillacs as well as other vehicles were registered to defendant at this same address. *Id.* at ¶ 8.

On September 27, 2005, Freeman conducted another controlled buy with a confidential source (CS) and the defendant. *Id.* at ¶¶ 9-12. Agents searched the CS' person and vehicle and found no drugs. *Id.* at ¶ 9. Agents gave the CS money to buy drugs and outfitted the CS with a wire. *Id.* ¶ 9. As agents monitored the CS with the wire, the CS telephoned the defendant and ordered a quantity of cocaine. *Id.* Defendant told the CS he would call him/her back. *Id.* Thirty minutes later, defendant called and arranged to meet the CS in Athens, Tennessee in about fifteen minutes. *Id.* Freeman followed the CS and maintained audio and visual surveillance of the CS as he/she drove to meet the defendant. *Id.* at ¶ 9-10.

At the same time Freeman was monitoring the telephone contact between the CS and the defendant, other agents were watching 1484 County Road 250 in Niota, Tennessee. *Id.* ¶ at 10. These agents observed a black male, later identified as the defendant, arrive at the residence in a green Cadillac, remain for two to three minutes in his car outside the residence and then leave. *Id.* Other agents followed the Cadillac to Harper Johnson Road in Athens, Tennessee where Defendant eventually met with the CS. *Id.* at ¶¶ 10-12. Freeman and another agent monitored the CS' meeting with the defendant during which the CS purchased two ounces of cocaine. *Id.* at ¶ 12. After the purchase, Freeman followed the CS to a debriefing location where the CS released two ounces of cocaine. Freeman searched the CS' person and vehicle and no other drugs were found. *Id.*

3

*A. The Reliability of Freeman's Sources of Information*

Defendant argues the affidavit used to obtain the search warrant for his residence failed

to establish probable cause because the veracity and reliability of the confidential sources

mentioned in the affidavit were not demonstrated.  The Fourth Amendment provides "no warrant

shall issue but upon probable cause, supported by oath or affirmation...."  *U.S. Const. amend IV.*

To establish probable cause to justify a search warrant, an affidavit must set forth facts which

indicate "a fair probability exists that evidence of a crime will be located on the premises of the

proposed search."  *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations

omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005).  The Court must consider

the totality of the circumstances as set out in the four corners of the affidavit.  *Illinois v. Gates*,

462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming*

*State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself);

*Frazier*, 423 F.3d at 531.  Where an affidavit relies upon hearsay information from a confidential

informant to supply probable cause, "a court must consider the veracity, reliability, and the basis

of knowledge of that information as part of the totality of the circumstances for evaluating the

impact of the information."  *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d

812, 819 (6th Cir. 2003)).  Independent police corroboration of a confidential informant's story is

not necessarily required to support probable cause, but where the affidavit lacks indicia of the

informant's reliability, "courts insist that the affidavit contain substantial independent police

corroboration."  *Frazier*, 423 F.3d at 532; *see also*, *United States v. McCraven*, 401 F.3d 693,

698 (6ᵗʰ Cir. 2005); *United States v. Woosley,* 361 F.3d 924, 927 (6ᵗʰ Cir. 2004); *United States v. Allen,* 211 F.3d 970, 976 (6ᵗʰ Cir.) (en banc), *cert. denied*, 531 U.S. 907 (2000).

Special Agent Freeman's affidavit provides no statement about past experiences with the CS's regarding their reliability or veracity. For example, affidavits will often contain some statement from the affiant that he has known the CS for a certain period of time and that during that time the CS has provided information of illegal drug trafficking which has led to the arrest and conviction of individuals for drug related charges. As the instant affidavit contains no such averment, independent police corroboration of the CS's information is necessary in order to rely upon the CS's information to establish probable cause.

Freeman's affidavit carefully details a controlled buy for each confidential source.[1] Agents searched the CS and his/her car for drugs before each controlled buy. Agents listened to the controlled buys over a wire transmitter carried by each CS, and, at least in the second buy, the defendant and the CS were observed arriving at the meeting place for the buy. After each buy, the CS turned over the contraband purchased and was again searched.

The Sixth Circuit's recent decision in *United States v. Coffee*, 434 F.3d 887 (6ᵗʰ Cir. 2005) is directly on point on this issue. In *Coffee*, the warrant affidavit contained no averments from the affiant that he knew the confidential source to be reliable based on prior contacts. However, the affiant detailed a controlled buy using the confidential source, and the Sixth Circuit found this information sufficient to establish the confidential source's reliability and veracity:

---

[1] I cannot discern from the affidavit if the CS's mentioned are two people or one.

5

Here, the details of the controlled purchase, and its connection to 26868 Penn, were spelled out in the affidavit. Officer Adams indicated that the CI [confidential informant] "has made several purchases from" 26868 Penn. He further described the controlled purchase that he organized to corroborate the informant's information. The CI's basis of knowledge was his direct purchase of narcotics from defendant; the purchase was controlled and witnessed by Officer Adams, who searched the CI for money or contraband, provided the CI with pre-recorded funds, observed the CI enter and exit defendant's house, and then observed and tested the crack cocaine the CI purchased from defendant. Under the totality of the circumstances, Officer Adams' affidavit adequately corroborated the CI's information in this case ...

*Coffee*, 434 F.3d at 894. In the instant case, the corroborating facts set forth in the affidavit about the controlled buys are even stronger than those in *Coffee*. In this case, the controlled buys were actually heard by police as they occurred thereby further bolstering the CS(s)' reliability. Consequently, I conclude the affidavit contains sufficient independent corroboration to adequately establish each CS's reliability and veracity.

Defendant also complains about hearsay information from other law enforcement officers besides Freeman in the affidavit. However, an affiant may rely upon hearsay information in order to set forth probable cause, provided the source of information is reliable. *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 551 (6th Cir. 2003) ("An affidavit on which a search warrant is issued need not reflect direct personal observations of the affiant if the hearsay information is derived from a credible source."); *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2002) ("in evaluating whether probable cause exists for issuing a search warrant, a judicial officer may rely on hearsay evidence.") It is well established that "observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca*, 380 U.S. 102, 111 (1965). The

effectiveness of the affidavit is not diminished because Freeman uses hearsay information from other officers.

   B. *The Nexus Between the Residence and Criminal Activity*

   The defendant also attacks the affidavit on the ground that it fails to establish a sufficient nexus between alleged drug dealing and his residence, 1484 County Road 250, Niota, Tennessee, to justify issuance of a search warrant for his residence. The police had ample probable cause to believe defendant was dealing in illegal drugs based on the two controlled buys. But whether there was probable cause to believe evidence of defendant's illegal drug activity would be found in the defendant's residence is another matter. "There must be a 'nexus between the place to be searched and the evidence to be sought.'" *Frazier*, 423 F.3d at 532 (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quotation omitted)). "'The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Frazier*, 423 F.3d at 532 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, (1978)).

   Freeman states in his affidavit that a drug trafficker often hide drugs, money, guns, and other evidence of drug trafficking in his residence. Furthermore, Freeman avers that on September 27, 2005, agents saw the defendant arrive in his Cadillac at his residence, 1484 County Road 250, Niota, Tennessee, and park there for about three minutes shortly after the CS called to place an order for cocaine and shortly before the defendant left his residence to deliver the cocaine. Had the affidavit stated the defendant went inside his residence, for however brief a period of time, before driving to Athens for the drug deal, there would be no question that the

7

affidavit supports probable cause to issue the search warrant. The defendant's entry into the house would have led to a reasonable inference that the defendant retrieved the cocaine for the drug transaction from the house. But the affidavit does not state that the defendant went inside the house on September 27, 2005. Thus whether there is a sufficient nexus between drug activity and the residence to support probable cause is a much closer question.

There is a line of Sixth Circuit cases that indicates a law enforcement officer's knowledge that drug traffickers often store evidence of their crimes in their homes is sufficient information in an affidavit to establish a nexus between a drug trafficker and his home. In *United States v. Miggins*, 302 F.3d 384 (6th Cir. 2002), *cert denied*, 537 U.S. 1097 (2002), 537 U.S. 1130 (2003), 538 U.S. 971 (2003), the affidavit used to obtain the search warrant for the defendant's residence stated the following: an undercover officer delivered a package known to carry cocaine to a Cooper Terrace address. The defendant signed for the package and was then arrested. After he was arrested, a piece of paper was found in his pocket inscribed with the names of the addressee and sender of the package and the Cooper Terrace address. The defendant had been convicted on numerous drug charges in another state. The Sixth Circuit held the affidavit provided probable cause to search the defendant's apartment located at another address citing numerous cases from other circuits standing for the proposition that it is reasonable to believe a drug dealer will store evidence of his dealing at home even though no drug trafficking has been observed to occur there. *Miggins*, 302 F.3d at 393-94 (*see also* cases cited therein). In *United States v. Blair*, 214 F.3d 690, 696 (6th Cir.), *cert. denied*, 531 U.S. 880 (2000), the court held a search warrant was properly issued where the affiant stated it was his experience that drug traffickers stored evidence in their homes, and cooperating witnesses,

8

whose reliability was verified, provided information that the defendant had sold them drugs at locations other than the defendants' home.  In *United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998), the search warrant was upheld where there was no information in the affidavit that anyone observed or heard about drugs or drug sales in the defendant's home, but the affidavit did provide that at least two drug transactions with the defendant had been recorded using a confidential informant wearing a wire outside on the premises of the defendant's home.  In *United States v. Caicedo,* 85 F.3d 1184, 1193 (6th Cir. 1996), the defendant was arrested after picking up a friend at the bus station who was carrying cocaine in his backpack.  Upon his arrest, the defendant was evasive about his correct address.  A search warrant for the defendant's residence was obtained on the basis of an affidavit explaining the defendant's arrest and his attempt to conceal his address and detailing the officer's experience and his knowledge that drug traffickers often keep items related to drug trafficking in the homes.  The Sixth Circuit held the affidavit adequately established probable cause to search. *Id.* at 1193.

The undersigned believes these cases provide ample authority to conclude that the affidavit at issue, based on the totality of the circumstances, provides probable cause to search defendant Gunter's residence.  There is one more case, however, that bears discussion and that, upon first glance, appears to require a different result.

In *United States v. Frazier*, 423 F.3d 526 (6th Cir. 2005), an ATF agent secured six (6) search warrants for various locations related to a large drug conspiracy. The sixth warrant was for a residence of the leader of the conspiracy, Frazier. The probable cause supporting the issuance of the warrant consisted of two controlled buys of drugs by confidential sources from associates of Frazier at Frazier's residence located at 759 Culver Court. The controlled buys

9

were recorded, but, significantly, the agent forgot to include this fact in his affidavit. He did

orally mention this fact to the Magistrate. The affidavit in support of the search warrant also

detailed that Frazier had been evicted from his residence on Culver Court, and the cleaning staff

had found drugs in that residence. The search warrant authorized a search of Frazier's new

residence on Jeffries Street. None of the buys were alleged to have taken place at Frazier's

Jeffries Street address, and, in fact, it was not even alleged that Frazier himself sold the drugs to

the confidential informant. *Id.* at 529. Moreover, the affidavit said nothing about the reliability

of the confidential sources. The Sixth Circuit began its analysis with the rule that it is limited to

the four corners of the affidavit in determining if there was probable cause to issue the search

warrant. *Id.* at 531. The Court then held that because there were no averments in the affidavit

about the informants' reliability and no corroboration of the information provided by the

informants, the affidavit failed to set forth probable cause to search Frazier's new residence. *Id.*

at 532. Rejecting the government's argument that the Court's previous decisions in *Miggins,*

*Blair, Jones,* and *Caicedo* provided authority to find the affidavit in this case set forth probable

cause, the *Frazier* Court stated:

> None of these cases, however, supports the proposition that the defendant's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home. Where, as here, the *warrant affidavit is based almost exclusively on the uncorroborated testimony of unproven confidential informants* (none of

10

> whom witnessed
> illegal activity on the
> premises of the
> proposed search), the
> allegation that the
> defendant is a drug
> dealer, without more,
> is insufficient to tie
> the alleged criminal
> activity to the
> defendant's residence.

*Id.* at 533 (emphasis added).  The only way to reconcile the *Frazier* decision with those in

*Miggins, Blair, Jones,* and *Caicedo* is to focus on the *Frazier* Court's concern that the *Frazier*

"warrant affidavit [was] based almost exclusively on the uncorroborated testimony of unproven

confidential informants."  In *Miggins, Blair, Jones,* and *Caicedo*, as is true in the instant case, the

underlying evidence of actual drug dealing on the part of the defendant was much stronger than

"uncorroborated testimony of unproven confidential informants."  While the informants in this

case were "unproven" to the extent there were no statements in the affidavit that they had been

used in the past and had been proven reliable, the information they provided was strongly

corroborated.  The Gunter affidavit detailed two controlled buys.  Police observed the CS's and

the defendant arrive at the meeting place and police actually heard the transactions as they were

occurring.

The Fourth Amendment's requirement of probable cause for the issuance of a warrant is

not to be applied according to a fixed and rigid formula.  *Illinois v. Gates*, 462 U.S. 213, 230-32

(1983).  "Probable cause is a fluid concept – turning on the assessment of probabilities in

particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules."

*Id.* at 232.  The question before the undersigned is whether, based upon the totality of the

circumstances set forth in the affidavit and using a practical, common-sense approach, a fair probability existed that evidence of a crime would be found at Gunter's residence when the search warrant was executed. *Id.* at 238. I conclude Freeman had probable cause to search the defendant's house based on the two controlled purchases of drugs from the defendant, the fact that the defendant made a short stop at his residence immediately before the second drug transaction, and Freeman's training and experience that drug traffickers frequently hide evidence of their crimes in their homes.

### C. The Good Faith Exception

Evidence obtained pursuant to a search warrant later determined deficient need not be excluded where the officer executing the warrant reasonably and in good faith relied on the search warrant. *United States v. Leon,* 468 U.S. 897, 905 (1984). "The 'good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. In making this determination, all of the circumstances may be considered.'" *Frazier*, 423 F.3d at 533 (quoting *Leon,* 468 U.S. at 922-23 n. 23) "[S]earches pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search." *Frazier*, 423 F.3d at 533 (quoting *Leon,* 468 U.S. at 922 (internal quotations omitted)).

*Leon*'s good faith exception does not apply in the following sets of circumstances: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate wholly abandoned his or her judicial role; 3) the affidavit is "so lacking in probable cause as to render

12

official belief in its existence entirely unreasonable;" or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable. *Frazier*, 423 F.3d at 533 (citing *Leon*, 468 U.S. at 923).

The government raised the *Leon* good faith exception in its response to the defendant's motion to suppress. The defendant did not reply to the government's response. In anticipation of such a position, the defendant does appear to argue in his brief in support of his motion to suppress that the affidavit is so lacking in probable cause as to render official belief in its existence unreasonable. As it appears that basis is the only circumstance which might obviate application of the good faith exception in the instant case and it is the only circumstance which defendant has addressed, I will confine my analysis to that circumstance, *i.e.*, whether the affidavit is so lacking in probable cause as to render official belief in its existence unreasonable.

While the Sixth Circuit in *Frazier* concluded the affidavit in that case lacked probable cause to issue a search warrant for Frazier's house, the Court also concluded "the affidavit established a sufficiently strong nexus between Frazier's alleged drug dealing and his home" to merit application of the *Leon* good faith exception. *Frazier*, 423 F.3d. at 536. As previously discussed, the evidence of probable cause to search as a whole is stronger in the *Gunter* affidavit than in the *Frazier* affidavit, and evidence of the nexus between the defendant's drug dealing and his residence is at least as strong in this case as it is in *Frazier*. Accordingly, I conclude that if Agent Freeman's affidavit fails to provide probable cause to search defendant Gunter's residence, the *Leon* good faith exception to the exclusionary rule applies.

*D. Defendant's Request for an Evidentiary Hearing*

*Franks v. Delaware*, 438 U.S. 154, 171 (1978) established the procedure by which a

defendant could seek the suppression of evidence by challenging the veracity of statements made

by an affiant in order to secure a search warrant. "Counsel can attack the validity of a search

warrant by alleging that the affidavit contains deliberately false statements." *United States v.

Hill*, 142 F.3d 305, 309 (6th Cir.), *cert. denied*, 525 U.S. 898 (1998) (citing *Franks v. Delaware*,

438 U.S. 154, 171 (1978). To do so requires an evidentiary hearing during which defendants are

allowed to present evidence concerning the veracity of the challenged statements in the search

warrant affidavit. *See United States v. Jenkins*, 728 F.2d 396, 397 (6th Cir. 1984). "In the event

that at that hearing the allegation of perjury or reckless disregard is established by the defendant

by a preponderance of the evidence, and, with the affidavit's false material set to one side, the

affidavit's remaining content is insufficient to establish probable cause, the search warrant must

be voided and the fruits of the search excluded to the same extent as if probable cause was

lacking on the face of the affidavit." *Franks,* 438 U.S. at 155-56 (1978). In order to obtain a

hearing to establish perjury or reckless disregard for the truth, the defendant must meet a two-

pronged test: "First, a defendant must make a substantial preliminary showing that specified

portions of the affiant's averments are deliberately or recklessly false." *Hill*, 142 F.3d at 310

(internal citations omitted). Second, the court must find that the challenged statements are

necessary to a finding of probable cause. *Id*. Significantly, the *Franks* Court emphasized that

only the affiant's statements, not those of a non-governmental informant, may be challenged as

deliberately false or made in reckless disregard for the truth. *Franks*, 438 U.S. at 171.

Franks v. Delaware does not provide for a hearing to conduct a fishing expedition on the

credibility of an affiant. Instead, the undersigned must follow the framework established by

14

*Franks v. Delaware*.  Because the defendant has not made a substantial preliminary showing, in the form of an affidavit or otherwise, of reckless or deliberate disregard for the truth on the part of Agent Freeman who prepared the affidavit to secure the search warrant, defendant is not entitled to an evidentiary hearing.

### IV. Conclusion

When considering the information presented in Agent Freeman's affidavit as a whole, I conclude the affidavit sets forth probable cause to issue the search warrant for the defendant's residence.  In the alternative, I conclude the *Leon* good faith exception applies, and evidence obtained in the September 28, 2005, search of Gunter's residence need not be suppressed. Finally, defendant has not made a substantial preliminary showing of a reckless or intentional disregard for the truth on the part of Agent Freeman in his affidavit to merit an evidentiary hearing on defendant's motion to suppress.  Therefore, it is RECOMMENDED that defendant's motion to suppress (Doc. 15) be DENIED in full.[2]

---

[2]Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985).  The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

16