UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 1:05-CR-149 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| | ) | |
| CORNELL P. GUNTER | ) | |

**M E M O R A N D U M**

Defendant Cornell P. Gunter ("Defendant") filed a motion to suppress evidence collected during the search of his residence on September 28, 2005 (Court File No. 15) which was referred to United States Magistrate Judge William B. Mitchell Carter to conduct an evidentiary hearing if necessary and make a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). On April 18, 2006, the magistrate judge filed a report and recommendation ("R&R") recommending Defendant's motion be denied (Court File No. 25).

Defendant filed an objection to the report and recommendation and requested a *de novo* hearing (Court File No. 26). Defendant contends there was an insufficient nexus between the alleged criminal activity and his residence to establish probable cause (*Id.*). He also argues the good faith exception cannot be applied here because no reasonably objective police officer could have relied on a warrant issued on the basis of this affidavit (*Id.*). After carefully considering both the filings of Defendant and the Government (Court File Nos. 15, 16, 22, 25, 26), the Court finds the magistrate judge's legal analysis to be correct under the relevant law.

## I. Standard of Review

This Court must conduct a *de novo* review of those portions of the report and recommendation to which objection is made and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

## II. Relevant Facts

On September 28, 2005, a warrant was issued by the Criminal Court, 10th Judicial District in McMinn County, Tennessee for the search of Defendant's residence at 1484 County Road 250 in Niota, Tennessee (Court File No. 15, ¶1). That same day, agents with the Tennessee Bureau of Investigation ("TBI") and the Tenth Judicial Drug Task Force ("DTF") executed this search warrant and searched Defendant's residence (Court File No. 22, p.2). The officers seized cocaine, large amounts of cash, and a gun from the house (*Id.*). In addition, drug paraphernalia was discovered in the Defendant's Cadillac parked outside the residence (*Id.* at 4).

The search warrant was issued pursuant to an application and affidavit of TBI Special Agent Bryan Freeman (Court File No. 15, ¶ 1). The following facts were given in the affidavit and considered by the Criminal Court, 10th Judicial District, as justification for the search warrant:

Special Agent Freeman has been an employee of the TBI for approximately nine years (Court File No. 16-2, ¶ 1). Prior to his employment at TBI, he was an agent with DTF for two years (*Id.*). As a result of his extensive training and experience, Freeman is familiar with common operating patterns utilized by persons involved with illegal drug trafficking (*Id.*). One such operating pattern Special Agent Freeman is aware of is individuals often use their residences and the area and property surrounding their residences to conceal evidence of their illicit crimes (*Id.* at ¶¶ 1A-1C, 1L-1H).

In fall, 2003 Special Agent Freeman and other law enforcement officers began investigating a conspiracy of cocaine trafficking in McMinn County, Tennessee (*Id.* at ¶ 2). In September, 2005, Freeman spoke with a confidential source ("CS") who informed him he could potentially purchase cocaine from Defendant (*Id.* at ¶ 4). On September 22, 2005, Special Agent Freeman and other DTF agents met with the CS and observed him phone Defendant and make arrangements to purchase cocaine (*Id.* at ¶ 5). They provided the CS with a transmitting device and money to purchase the cocaine and proceeded to follow him to Harper Johnson Road in Athens, Tennessee, where they listened and observed Defendant sell approximately two ounces of cocaine to the CS (*Id.* at ¶ 6).

On September 27, 2005, Special Agent Freeman and other DTF agents once again monitored the CS's phone call to Defendant, gave the CS a transmitting device and money with which to purchase the drugs, and followed him to the meeting place (*Id.* at ¶ 9). Concurrently, two other agents were monitoring Defendant's house and saw a dark-colored Cadillac driven by a black male, later identified as Defendant, enter the driveway (*Id.* at ¶ 10). The Cadillac remained at the residence for two to three minutes before leaving (*Id.*). The agents followed the Cadillac to Harper Johnson Road, Athens, Tennessee where Defendant met the CS (*Id.* at ¶ 12). Once more, the nearby agents observed and listened to the this meeting during which Defendant sold approximately two ounces of cocaine to the CS (*Id.*).

## III. Analysis

Defendant asserts all evidence seized as a result of the search warrant was obtained in violation of his Fourth Amendment rights and should be suppressed (Court File No. 15).

### A. Validity of Search Warrant/ Probable Cause

In order for a judge to issue a warrant, law enforcement officers must present sufficient evidence from which the judge can conclude that evidence will be found in a particular place. *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). To reach a conclusion, the totality of the circumstances must be examined in a "realistic and common sense fashion." *United States v. Van Shutters*, 163 F.3d 331 (6th Cir. 1998). There also must be a logical nexus between the place to be searched and the criminal activity. *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). In addition, if the evidence presented by the affiant is mainly obtained from a confidential source, the affiant must provide the issuing judge with enough information that he can independently conclude the CS is reliable. *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).

The Supreme Court has held "probable cause requires only a probability or substantial chance of criminal activity." *Gates*, 462 U.S. at 243-44 n.14. A "practical nontechnical" probability incriminating evidence is involved is sufficient. *See Brown v. Texas*, 460 U.S. 730, 742 (1983).

### 1. Nexus between Criminal Activity and Defendant's residence

Defendant argues there was no nexus between the drug deals and his residence and, therefore, there was no probable cause to issue the search warrant. He points to the fact the CS gave no information as to the house itself or the presence of drugs at the residence, nor was Special Agent Freeman present to personally observe Defendant's car in the house's driveway (*Id.*).

The circumstances surrounding the issuance of the search warrant permitting search of Defendant's residence are comparable to the circumstances described in *United States v. Murphy*, 241 F.3d 447 (6th Cir. 2001). In *Murphy*, law enforcement officers observed the defendant leaving a motel room, meeting a CS outside the room to sell crack, and returning to his motel room. *Id.* at

4

457. The court determined these observations were sufficient to establish probable cause for the issuance of a warrant to search the motel room, regardless of the fact only one transaction was observed and this transaction did not occur in the motel room. *Id.* at 458.

While Defendant was not observed entering his house before the drug transaction, which would have clearly shown a connection between the residence and the criminal activity, the affiant included in the affidavit information which established the Niota residence as Defendant's and Defendant's presence at the residence prior to the drug purchase by the CS (Court File No. 16-2, ¶ ¶ 7, 10 ). Although the affiant did not personally observe Defendant at his residence, two other agents did (*Id.*). It is permissible for the affiant officer to rely on another officer's observations in an affidavit supporting a search warrant. *See United States v. Woods*, 544 F.2d 242, 260 (6th Cir. 1976) (noting for assessing whether probable cause exists, appeals court "mutually imputes the knowledge of all the agents working together on the scene and in communication with each other"); accord *United States v. Rodriguez-Suazo*, 346 F.3d 637, 650 (6th Cir. 2003).

Similar to the facts in Defendant's case is *United States v. Blair,* which held, along with information provided from reliable witnesses, the affiant's opinion, based on his extensive experience, that evidence would be found in the defendant's residence was sufficient to establish probable cause for the issuance of a search warrant. 214 F.3d 690, 696 (6th Cir. 2000). "In the case of drug dealers, evidence is likely to be found where the drug dealers live." *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998). In addition, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held in a series of cases an observation of drug trafficking outside the dealer's home can provide probable cause to search the dealer's house. *See United States v. Miggins*, 302 F.3d 384, 383-84 (6th Cir. 2002); *Jones*, 159 F.3d at 974; *United States v. Caicedo*,

85 F.3d 1184, 1193 (6th Cir. 1996).

Defendant relies upon *United States v. Frazier* which he contends contravenes this line of Sixth Circuit cases. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). In *Frazier*, an affidavit issued in circumstances somewhat similar to the Defendant's was determined to lack probable cause. *Id.* There, the affidavit detailed a drug conspiracy, included a cooperating informant's statement he had observed drug dealing out of the residence at issue, and described drug transactions but did not indicate those transactions actually were controlled buys caught on tape. *Id.* at 529-31. The court concluded review of sufficiency of the evidence was limited to the information presented in "the four corners of the affidavit." *Id.* When assessing the affidavit, the court determined because the affidavit was based almost solely on the uncorroborated testimony of an unproven confidential informant who never actually witnessed criminal activity, the suspicion the defendant is a drug dealer alone was not sufficient to tie the criminal activity to the defendant's residence. *Id.* at 533.

However, the circumstances in *Frazier* are clearly distinguishable from those here because Special Agent Freeman's affidavit included information the drug deals were observed and heard by both the CS and the agents. *See Id.*, (Court File No. 16-2, ¶ ¶ 5, 6, 9, 11-12). Unlike *Frazier*, there is more to Special Agent Freeman's affidavit than an uncorroborated allegation Defendant is a drug dealer. *See Id.*

"That defendant has pointed out specific factual details that the task force agents could have provided in the affidavit to the magistrate does not negate a finding of probable cause; this Court does not review the sufficiency of an affidavit through such a lens." *Murphy*, 241 F.3d at 458. The Court will **ACCEPT** and **ADOPT** the magistrate judge's analysis on this point and conclude the fact

the drug deal observed did not occur in the defendant's home does not require finding an insufficient nexus between the defendant's house and his criminal activity.

    **2.  Reliability of the Informant**

In this case, Special Agent Freeman did not give the judge who issued the warrant any information about the CS's reliability (Court File No. 15). There are two factors which are critical to the determination a CS's information provides a substantial basis for finding probable cause: 1) an explicit first-hand account of the wrongdoing, and 2) corroboration of the information by independent investigation. *Jones*, 159 F.3d at 975 (citing *United States v. Wright*, 16 F.3d 1429, 1438 (6th Cir. 1994). In the absence of indicia of the reliability of the CS's statements, the affidavit must contain substantial independent police support. *Frazier*, 423 F.3d at 532.

In *United States v. Coffee*, police corroboration was found to override the lack of proof of the CS's reliability merely because the officer observed the CS enter and leave the premises at which the drugs were obtained and was shown the drugs immediately after the CS departed the premises. *United States v. Coffee*, 434 F.3d 887 (6th Cir. 2006). The observation by the officer was sufficient even though the affidavit contained no assertions of the CS's reliability. *Id.* Special Agent Freeman's affidavit provided even more independent corroboration as the agents directly observed and heard the transaction (Court File No. 16-2, ¶¶ 5, 6, 9, 11-12). In addition, Special Agent Freeman gave a detailed account of the transactions and the process undergone in his affidavit. (*Id.*)

It is clear the affidavit showed substantial independent police investigation and evidence Defendant was involved in drug trafficking. Although the agents did not know whether the CS was reliable when he first contacted them and Special Agent Freeman made no statement about past experiences which establish reliability, further dealings with the CS and careful first-hand

7

observation of him justified belief in the information provided.

Once again, Defendant cites *Frazier* in support of his argument. *See Frazier*, 423 F.3d at 530. However, unlike Special Agent Freeman's affidavit, the *Frazier* affidavit made no reference that the buys presented as evidence of probable cause were controlled buys caught on tape. *Id.* "The affidavit is judged on what it does contain, not on what it lacks or on what a critic might say should be added." *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000). Special Agent Freeman's first hand observation of the drug deals allowed the magistrate judge to find probable cause, regardless of the lack of proof of CS's reliability. The Court finds the magistrate judge's determination the information from the CS in the affidavit was reliable was supported by relevant law and will **ACCEPT** and **ADOPT** the magistrate judge's finding of probable cause.

    **B.**    **Good Faith Exception**

Defendant claims that without a valid search warrant, the evidence cannot be admitted without violating the Fourth Amendment. The Court will address this objection although it finds the search warrant to be valid.

The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands since the wrong condemned by the amendment is "fully accomplished" by the illegal search and seizure in itself. *United States v. Leon*, 468 U.S. 897, 906 (1984) (citing *United States v. Calandra*, 414 U.S. 228, 354 (1974)). Cases have recognized that excluding all evidence procured in violation of the Fourth Amendment would "impede unacceptably the truth finding function of judge and jury." *Id.* at 907 (quoting *United States v. Payner*, 447 U.S. 727, 734 (1980)). Consequently, evidence obtained by an invalid search warrant that officers executed in good faith is admissible. *Leon*, 468 U.S. at 897.

Accordingly, even if the warrant were determined invalid, the Court can determine whether the evidence should still be admitted under the good faith exception established in *Leon*. *Id.* Under this test "the relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether the probable cause existed in fact." *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004). Leon enumerates four situations in which the officer's reliance on a search warrant could not be presumed reasonable:

> 1) When the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) is false, 2) when the magistrate is not neutral and detached and serves merely as a rubber stamp for the police, 3) when the affidavit does not provide substantial basis for determining probable cause, and 4) when the officer has no reasonable ground for believing the warrant was properly issued.

*Leon*, 468 U.S. at 913, 923.

The legal issue brought to the attention of this Court is whether the warrant was so deficient that the officers conducting the search had no reasonable grounds for believing the warrant was properly issued. In *United States v. Shultz*, the affiant officer had not made any connection between the bank he searched and criminal activity that was the focus of the search. *United States v. Shultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994). However, he suspected, based on his training and experience, evidence of the crime would be found in the bank's safety deposit boxes. *Id.* Because the officer had undertaken a thorough investigation and had significant training and experience, the affidavit was "not so lacking" in indicia of probable cause as to render good-faith reliance unreasonable. *Id.* It has been held courts may take into account "the experience and expertise of law enforcement agents who observed the defendant's activity." *United States v. Valencia*, 24 F.3d 1106, 1108 (9th Cir. 1994).

9

Defendant's case is similar. Special Agent Freeman detailed his extensive experience and resulting knowledge in the affidavit (Court File No. 16-2, ¶ 1). He stated that he both watched and listened while the drug transactions between the Defendant and the CS took place (*Id.* at ¶ ¶ 5, 6, 9, 11-12). In addition, the Sixth Circuit has held it is appropriate to consider facts the agent knew which were not included in the warrant when assessing the reasonableness of his reliance. *Frazier*, 423 F.3d at 531. Whether or not the affidavit contained the appropriate information to justify the issuance of a search warrant, Special Agent Freeman's knowledge of the criminal activity and the habits of drug dealers justifies his determination of the validity of the search warrant. Consequently, the officers who conducted the search reasonably relied on the affidavit's legitimacy.

### C. Request for Evidentiary Hearing

Because Defendant fails to state any misrepresented facts or supply evidence to show that facts were fabricated or recklessly disregarded, the court will **ACCEPT** and **ADOPT** the magistrate judge's finding there is no entitlement to an evidentiary hearing.

### IV. Conclusion

For the reasons stated above, after carefully reviewing the documents presented to the magistrate judge, the Court has determined the magistrate judge's legal analysis is correct under the relevant law. Following those findings, the Court will **ACCEPT** and **ADOPT** the magistrate's determination evidence found during a search of Defendant's residence on September 28, 2005 need not be suppressed.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**