| | | |
|---|---|---|
| CORNELL P. GUNTER | ) | |
| | ) | |
| *a.k.a.* PERRY GUNTER | ) | |
| | ) | |
| v. | ) | 1:09-cv-215\1:05-cr-149 |
| | ) | *Judge Edgar* |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM

This matter is before the Court on Movant Cornell P. Gunter's ("Gunter") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Criminal Court File No. 47).[1] Gunter contends he was deprived of his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution in several instances. The United States has responded in opposition of the motion (Criminal Court File No. 54). Thus, the motion is ready for decision.

After reviewing the record, for the reasons explained herein, the Court concludes Gunter's § 2255 motion will be **DENIED** (Criminal Court File No. 47). The record conclusively shows Gunter is not entitled to any relief under 28 U.S.C. § 2255 and that an evidentiary hearing is not required.

## I.   STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court that imposed the sentence, to vacate, correct, or set aside that sentence, on the grounds:

---

[1]      Each document will be identified by the Court File Number assigned to it in the underlying criminal case.

the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. The movant has the burden of establishing any claim asserted in the petition by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that movants in § 2255 proceeding must prove allegations by a preponderance of the evidence).

Where a constitutional error is alleged, in order to obtain relief under § 2255 the record must reflect a constitutional error of such magnitude that it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Riggs v. United States*, 209 F.3d 828, 831 (6th Cir.), *cert. denied*, 531 U.S. 884 (2000); *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001), *cert. denied*, 535 U.S. 967 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## II.    PROCEDURAL HISTORY

On December 13, 2005, Gunter was charged in a five-count indictment, in the Eastern District of Tennessee at Chattanooga.  Gunter was charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) in Count One; possession with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) (Count Two), possession with intent to distribute in excess of five grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) (Count Three); possession of a short-barreled shotgun in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(B)(i) (Count Four), and possession of a short-barreled shotgun that had not been registered in the National Firearms and Registration and Transfer Record, in violation of 26 U.S.C. §§ 5845(a), 5861(d), and 5871 (Criminal Court File No. 3).

Gunter filed a motion to suppress to which the government responded (Criminal Court File Nos. 15, Motion to Suppress; 16, Memorandum of Law; 22, Response).  After conducting a hearing on the motion, the Magistrate Judge filed a report recommending denial of the motion (Criminal Court File No. 25).  Gunter filed objections but the District Court ultimately adopted the Magistrate Judge's recommendation (Criminal Court File No. 31).

The United States filed a Notice pursuant to 21 U.S.C. § 851  on May 9, 2006, informing Gunter that if convicted on either of the drug charges, his sentence would be subject to a statutory enhancement in light of his prior felony drug conviction (Criminal Court File No. 27).

On September 29, 2006, Gunter entered conditional guilty pleas pursuant to a plea agreement with the United States to Count Three for possession of crack cocaine with intent to distribute and to the § 924(c)(1)(B)(i) charge in Count Four, reserving the right to appeal the denial of his motion to suppress (Criminal Court File Nos. 36, Courtroom Minutes; 37, Conditional Plea Agreement).

Gunter was sentenced on February 22, 2007, to a statutory mandatory minimum 120 months

on the drug conviction, as required by 21 U.S.C. § 841(b)(1)(B) and to a statutory mandatory minimum consecutive sentence of 120 months on the § 924(c)(1)(B)(i) conviction, for a total sentence of 240 months (Criminal Court File No. 43, Judgment).

Gunter pursued a direct appeal (Criminal Court File No. 42). The Sixth Circuit affirmed his convictions finding that the Court did not err in denying his motion to suppress. *United States v. Gunter*, 266 Fed. Appx. 415 (6th Cir. 2008). Gunter's petition for writ of certiorari was denied on October 6, 2008. 129 S.Ct. 266 (2008). Gunter timely filed this § 2255 motion (Criminal Court File No. 47).

## III.   FACTS

The following facts are taken from the opinion of the Court of Appeals for the Sixth Circuit denying Gunter relief on his direct appeal:

> While conducting an investigation of Defendant Cornell Gunter, Tennessee law enforcement officers spoke with a confidential informant, who told them that he could potentially purchase cocaine from Defendant; and on September 22, 2005, the informant placed a call to Defendant to arrange a purchase. Agents of the Tennessee Bureau of Investigation ("TBI") monitored this call as the informant arranged to meet with Defendant later that day.

> Under the supervision of the TBI, the informant made a controlled purchase of cocaine from Defendant. Prior to the purchase, agents searched the informant's person and vehicle to be certain he was not carrying any controlled substances. The agents then provided the informant with a covert transmitter and listened as the informant purchased approximately two ounces of cocaine from Defendant. Upon completion of the transaction, the informant turned this cocaine over to the agents.

> Four days later, a TBI agent conducted a driver's license and vehicle registration inquiry on Defendant. This inquiry revealed Defendant's address in Niota, Tennessee, and indicated that he owned several vehicles, including a Dodge RT and two Cadillacs.

> On September 27, 2005, the TBI arranged another controlled purchase utilizing a confidential informant. While TBI agents were surveilling the Niota residence, the informant called Defendant to arrange the cocaine purchase. TBI agents monitored this call as Defendant told the informant that he was traveling, but would meet the

informant in nearby Athens, Tennessee. Around the same time as this phone call, the agents watching Defendant's Niota residence observed a green Cadillac, driven by Defendant, arriving at that residence. The Cadillac remained at the residence for two to three minutes. TBI agents then followed the Cadillac as it stopped at another residence, and eventually traveled to the site of the controlled purchase. Like the first purchase, this controlled purchase was also monitored via transmitter by the TBI.

The next day, TBI Special Agent Bryan Freeman sought a warrant to search Defendant's residence for drugs, evidence of drug transactions and firearms. In addition to setting out the above facts in an affidavit accompanying the warrant application, Agent Freeman also described his significant experience in narcotics investigations, including over 100 investigations into drug trafficking, and stated that in his experience "individuals involved in drug trafficking frequently conceal, in their residence ... caches of illicit drugs, large amounts of Unites [sic] States currency and/or other illicit proceedings of drug transactions, as well as records of drug transactions." (J.A. 34.) A photo of Defendant's residence was also included in the affidavit to indicate the premises to be searched. Based on this affidavit, a Tennessee state judge issued a warrant to search Defendant's home. The ensuing search uncovered narcotics, cash and firearms, as well as drug paraphernalia in a Cadillac parked outside the residence.

*United States v. Gunter,* 266 Fed.Appx. 415, 416-417, 2008 WL 482031, 1 (6th Cir., 2008)

## IV.    ANALYSIS OF CLAIMS

Gunter raises five instances of alleged ineffective assistance of counsel in his § 2255 motion which the Court will address after reviewing the law applicable to ineffective of assistance of counsel claims.  As to Gunter's claim that he is entitled to an evidentiary hearing, he is mistaken as the files and record in this case conclusively show he is entitled to no relief.

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

First, the defendant must show that counsel's performance was deficient. This

requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. In plea proceedings, the movant must show but for counsel's deficient performance, he would not have pleaded guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, a defendant is required to present evidence apart from a lone assertion that but for counsel's error he would have

pleaded not guilty and gone to trial. *See Parry v. Rosemeyer*, 64 F.3d 110, 118 (3rd Cir., 1995) ("A defendant alleging ineffective assistance of counsel in the guilty plea context must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial."), *cert. denied*, 516 U.S. 1058 (1996); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir.1994), *cert. denied*, 514 U.S. 1071 (1995); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1986) (merely making a claim that he would have pleaded differently and gone to trial is insufficient); *United States v. Campbell*, 778 F.2d 764, 768 (11th Cir. 1985) (bare allegation that defendant would not have pleaded guilty if her trial counsel had advised her properly is not sufficient to establish prejudice under *Strickland*). The standard by which a court reviews counsel's performance is highly deferential, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Sims v. Livesay*, 970 F.2d 1575, 1579-80 (6th Cir. 1992).

The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

## A.      Failure to Negotiate a Plea Agreement Without a § 851 Enhancement

In his first claim, Gunter contends that defense counsel was deficient in failing to negotiate a plea agreement with the United States to withdraw the § 851 Notice in exchange for Gunter's

agreement to plead guilty to the crack cocaine charge (Criminal Court File No. 47). Gunter claims, without providing any factual support and without identifying any of the cases to which he is referring, that "the government routinely withdraws a previously filed § 851 Information in exchange for a plea of guilty from the defendant." (Criminal Court File No. 48, p. 8). Gunter speculates that "[b]ased on the record in this case, it cannot be disputed that the United States would have been amenable to such an agreement[]" i.e., withdrawing his § 851 Notice in exchange for his guilty plea. Gunter contends that if counsel had just made this request, "there is a reasonable probability that the government would have agreed to a sentence that was not predicated on an [sic] § 851 Information." (Criminal Court File No. 48, at 8-9). Gunter claims counsel not only performed deficiently for failing to negotiate the withdrawal of the § 851 Notice, but counsel performed deficiently for failing to make him aware of "this potential concession."

The prosecuting Assistant United States Attorney ("AUSA") in Gunter's underlying criminal case filed the government's response to his § 2255 motion and "adamantly states that the United States would never have agreed in this case to withdraw the § 851 Notice or offer petitioner a plea agreement in which it waived the enhanced statutory mandatory penalty that was prescribed by Congress as to petitioner's drug conviction in the this case. Petitioner is absolutely mistaken in his belief that this was a negotiable option, and also is mistaken in his belief that the United States 'routinely' foregoes the Congressionally-mandated sentence in a drug case." (Criminal Court File No. 54, p. 9). The AUSA further asserts that absent some extremely rare mitigating circumstance, the government pursues all statutory enhancements in virtually all drug cases where they are applicable and would not expect the Court to accept a plea agreement that did not include the prescribed statutory penalty.

The Court need not rule on Gunter's allegation of deficient performance in this instance

because even assuming trial counsel's performance was deficient, Gunter has failed to establish prejudice. *Strickland v. Washington,* 466 U.S. at 697 ("If it is easier to dispose of an effectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"). To demonstrate prejudice, Gunter "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* At 694.

Aside from the AUSA's assertions that he would have never agreed to withdraw the § 851 Enhancement, Gunter's factually unsupported and self-serving claims and speculation that the government would have been amenable to such an agreement but for counsel's alleged failure, are insufficient to demonstrate a reasonable probability that but for counsel's error the proceeding would have been different. First, absent some extraordinary circumstance the Court would not have been inclined to accept a plea agreement that did not include the prescribed statutory penalty. Second, Gunter's speculative assertions fail to establish a reasonable probability that the government would have agreed to withdraw the § 851 Notice. Finally, Gunter's bare assertion that if "counsel made [him] aware of this potential concession, [he] would not have entered into this plea agreement, but would have insisted on entering a plea without being subjected to the enhancement, or would have proceeded to trial to preserve his rights[,]" is insufficient to demonstrate a reasonable probability that he could have proceeded to trial (Criminal Court File No. 48, at 9). Gunter has not presented any evidence apart from his lone assertion that he would have proceeded to trial. Therefore, Gunter is unable to satisfy his burden under the prejudice prong and this claim provides no relief.

**B.      Title 18 U.S.C. § 924(c)(1)(B)(i)**

In this claim, Gunter intertwines an actual innocence claim with two ineffective assistance

of counsel claims. First, Gunter asserts he is actually innocent of the § 924(c)(1)(B)(i) offense, and second that counsel performed deficiently in advising him to plead guilty to that count of the indictment because the facts in his case do not demonstrate he possessed the loaded short-barreled shotgun "in furtherance" of the charged drug offense (Criminal Court File No. 48, at 12-14). In his third claim, Gunter alleges counsel was deficient for failing to advise him the government had to prove the length of the shotgun and that they had to include the barrel length in the indictment in order to convict him of violating § 924(c)(1)(B)(i) (Criminal Court File No. 48, at 15).

The Court will begin its analysis with the actual innocent and related ineffective assistance of counsel claims after analyzing the law applicable to these claims. In support of these first two claims, Gunter alleges he advised counsel that "the shotgun had nothing to do with the drugs he had sold, that he never carried the firearm during drug transactions, and that the weapon was simply for sport[,]" but nevertheless, counsel advised him to plead guilty because the gun was found in the house (Criminal Court File No. 48, at 13). To put these two claims into perspective, the Court makes an observation at the outset–Gunter entered a guilty plea admitting that he possessed a loaded (one round of ammunition chambered and three additional rounds in the magazine) modified shotgun which was found in the southwest bedroom along with $10,000.00 found inside a cigar box, and $100.00 found inside a second cigar box. Gunter further admitted possessing the cocaine base ("crack") and cocaine hydrochloride that was found in the southeast bedroom (Criminal Court File No. 37, at 6-7).

### 1. *Actual Innocence Law*

To prove actual innocence, a § 2255 movant must demonstrate his factual innocence and not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable

evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). There is a difference between a "gateway claim" and a "freestanding claim" of actual innocence. *See House v. Bell,* 547 U.S. 518 (2006). To demonstrate actual innocence as a gateway to permit a court to reach a defaulted claim, a § 2255 movant is required to present *new evidence* of his innocence that establishes "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U. S. At 537.

A freestanding claim of actual innocence is an attempt to prove outright innocence. *See House,* 547 U.S. at 554-55; *see also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (recognizing the possibility of a freestanding actual innocence claim). Nevertheless, a freestanding claim of actual innocence has never been explicitly recognized by the Supreme Court. *House,* 547 U.S. at 555 (concluding "that whatever burden a hypothetical freestanding innocence claim would require this petitioner has not satisfied it"). The *House* Court did, however, establish that the standard for any freestanding innocence claims would be higher than the standard for a successful gateway innocence claim. *Id.* ("The sequence of the Court's decisions in *Herrera* and *Schlup*–first leaving unresolved the status of freestanding claims and then establishing the gateway standard–implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*"). Nevertheless, whether a claim of actual innocence is freestanding or a gateway claim, a "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup*, 513 U.S. at 324.

2. *§ 924(c) Applicable Law*

Title 18 U.S.C. § 924(c) prohibits the "possession" of a firearm "in furtherance of" certain crimes. Section 924(c)(1)(B)(i) provides that "[i]f the firearm possessed by a person convicted of a violation of this subsection - - is a short-barreled rifle, short-barreled shotgun, or semiautomatic

assault weapon, the person shall be sentenced to a term of imprisonment of not less than 10 years[.]" The legislative history of the 1998 amendment to the statute "indicates that the amended versions of the statute added the phrase criminalizing possession 'in furtherance of' a drug trafficking crime in order to 'revers[e] the restrictive effect of the *Bailey* decision.'" *United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002) (quoting H.R. Rep. 105-344, at 6 (1997)).

The Sixth Circuit has explicitly held that § 924(c) is "not a specific intent offense[.]" *United States v. Brown*, 915 F.2d 219, 225 (6th Cir. 1990). In *Brown*, the Sixth Circuit explained that it is only necessary to show a relationship between the gun and the crime as "[t]he statute [§924 (c)] is satisfied with a sturdy, subtle spider's web." With respect to the possession of a firearm in furtherance of a drug trafficking offense, the Sixth Circuit requires the government to "show a 'specific nexus between the gun and the crime charged' and that the firearm 'was strategically located so that it is quickly and easily available for use.'" *United States v. Ham*, 628 F.3d 801, 809 (6th Cir. 2011) (quoting *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001). "Other factors to consider include: (1) 'whether the gun was loaded,' (2) 'the type of weapon,' (3) 'the legality of its possession,' (4) 'the type of drug activity conducted,' and (5) 'the time and circumstances under which the firearm was found.'" *United States v. Ham*, 628 F.3d at 808-09 (quoting *United States v. Mackey*).

For example, the Sixth Circuit has determined that "[a]lthough possession of a firearm in the same premises as the drug trafficking activities alone is insufficient to support a conviction under section 924(c), a jury can reasonably infer that firearms which are strategically located so as 'to provide defense or deterrence in furtherance of the drug trafficking' are used in furtherance of a drug trafficking crime." *United States v. Couch*, 367 F.3d 557, 561 (6th Cir. 2004). In addition, the Sixth Circuit has found that possession of a firearm for one purpose does not foreclose the court from

finding that the firearms were also possessed for another purpose, i.e., to facilitate a drug offense. *United States v. Moore*, 239 Fed.Appx. 137, 141 (6th Cir. 2007), *available at* 2007 WL 1804351 (the fact Moore collected guns because it was his hobby did not prevent the court from finding he also possessed them to protect or otherwise facilitate a drug transaction).

### 3. *Actual Innocence Claim*

Gunter raises a "freestanding actual innocence claim" arguing he is actually innocent of possessing the loaded firearm in furtherance of his drug activity because the firearm was (1) not found near the drugs, (2) not carried on either of the two monitored drug transactions, and (3) was possessed "simply for sport[.]" (Criminal Court File No. 57, at 6). The Court makes an observation before analyzing Gunter's actual innocence claim–Gunter entered a guilty plea admitting he knowingly possessed the short-barreled shotgun, in furtherance of the drug-trafficking crimes set out in Counts 2 and 3 of his indictment and agreed with the government's factual basis that the gun was loaded in a bedroom where drug money was located; thus, his guilty plea was an admission under oath that this firearm was possessed in furtherance of this drug trafficking activities (Criminal Court File No. 51, at 7). Gunter now claims, however that he is actually innocent of possessing the loaded firearm in furtherance of his drug activity because the firearm was: (1) "simply for sport," (2) possessed apart from his drug trafficking activities, and (3) found in the southwest bedroom rather than in close proximity to the drugs, which were stored in the southeast bedroom.

Gunter is under the mistaken belief that because the loaded firearm was found in the southwest bedroom with an infant and where some of his drug money[2] was stored, rather than in the southeast bedroom where he kept his drugs along with large sums of U.S. currency, and because the

---

[2] The PSR converted the $80,095.00 confiscated be law enforcement to a quantity of cocaine powder and added to the total amount of drugs (PSR, at 4, ¶ 12).

firearm was allegedly acquired "simply for sport[,]" the gun was not possessed in furtherance of his drug trafficking. It is wholly immaterial that Gunter may have possessed the firearm apart from his drug trafficking, or that he did not initially acquire it in furtherance of his drug trafficking. These alternative reasons for possessing the firearm, however, do not qualify as new reliable evidence and do not demonstrate he is actually innocent of possessing the firearms in furtherance of his drug trafficking crime. Indeed, the evidence that the weapon was not found in the bedroom with the drugs, the lack of evidence of Gunter carrying a weapon during drug transactions, and alleged purchase of the weapon for "sport" were facts known at the time of his arrest and during his federal criminal proceedings. Hence, neither his alternative reason for purchasing the weapon nor the fact that the weapon was not in the same room as the drugs constitute new reliable evidence (defined as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that is not presented at trial), as required to demonstrate his claim of "actual innocence" which "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To establish actual innocence, Gunter must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (internal punctuation and citations omitted). The Court will review the evidence in the record. As stated in Gunter's plea agreement, when the police knocked on the door and announced their presence and intention to execute a search warrant, they heard movement inside the residence and had to make entry into the home. After displaying a copy of the warrant to Gunter, he waived his rights and directed law enforcement officials to the southwest bedroom. In the floor of that bedroom, and approximately two feet from where the an infant was found in his baby carrier, Gunter pointed out a modified shotgun contained in a green nylon bag. The shotgun was seized and found to be loaded with one round of ammunition chambered and three additional rounds in the magazine. In addition,

$10,000.00 was found inside a cigar box in the bedroom with the weapon and $100.00 was found inside a second cigar box (Criminal Court File No. 7, at 6-7).

Aside from the fact that Gunter has not met the first prong of the "actual innocence" standard as he has not presented any new reliable evidence, based on the evidence in the record, a trier of fact could reasonably conclude that Gunter possessed the firearm to protect his proceeds from the drugs and the drugs that were located in the residence, albeit in another bedroom. Therefore, in light of all the evidence the Court is unable to conclude that it is more likely than not that no reasonable juror would have convicted Gunter.

In sum, instead of presenting new reliable evidence that would establish his factual innocence, Gunter merely asserts he had other reasons for possessing the firearms. Thus, because he has not supported his allegation of actual innocence with new reliable evidence, and he has not demonstrated "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup*, 513 U.S. at 327, Gunter has not met the standard for establishing either a gateway or freestanding innocence claim. Submission of these other reasons for possessing the firearms simply do not provide a sufficient basis to collaterally attack his guilty plea. Accordingly, Gunter's actual innocence claim fails

4. *Counsel's Advice*

Similarly, Gunter's alternative claim that counsel performed deficiently when he advised Gunter to plead guilty to the § 924(c)(1)(B)(i) also fails because Gunter is unable to demonstrate counsel performed deficiently or that he suffered any prejudice. Specifically, Gunter's lone allegation that "[h]ad counsel taken the time to explain to Mr. Gunter the true meaning of 'in furtherance of,' Mr. Gunter would have never pled guilty to this count, but would have insisted on

proceeding to trial and making the government prove the charge beyond a reasonable doubt[,]" is insufficient to show a reasonable probability that he would not have pled guilty but for counsel's alleged deficient performance (Criminal Court File No. 48).

In the instant case, the loaded short-barreled shotgun, which had not been registered to him in the National Firearms Registration and Transfer Record as required by Chapter 53, Title 26, United States Code, was located in the southwest bedroom where $11,000.00 was found inside cigar boxes and near the southeast bedroom where Gunter kept his drugs and various other amounts of U.S. Currency (Criminal Court File No. 37). Had this case gone to trial, a reasonable jury could infer that, based upon this evidence along with Gunter's reason for possessing the short-barreled shotgun, at least one of the purposes of the firearms was to protect or facilitate or have the potential of facilitating the drug trafficking offense.

The burden is on Gunter to prove counsel's advice was unreasonable under prevailing professional norms. *Strickland*, 466 U.S. at 688. Assuming for the sake of discussion that Gunter's assertions are true (the weapon was bought for sport and he did not carry it during the two monitored drug transactions), that still does not demonstrate he was not guilty of the charge as the loaded firearm was easily accessible to him and was found in a bedroom with what a trier of fact could reasonably conclude was drug money since he had not reported any income in the prior five years. In addition, drugs were found in a nearby bedroom. Based on Sixth Circuit case law, the evidence supports his guilty plea as it reasonably appears that the firearm found loaded in the southwest bedroom was ready to be used to protect the money, the drugs, or otherwise facilitate his drug trafficking activity. Gunter has not offered any affirmative evidence to the contrary or any credible evidence to contradict his plea to possessing the firearm in furtherance of a drug trafficking crime. Hence, he has not demonstrated counsel rendered unreasonable advice in relation to the 924(c)

conviction.

Importantly, Gunter does not deny the short-barreled shotgun was loaded and accessible to him to protect his money and drugs. Gunter's failure to show counsel's advice to plead guilty was deficient or that his guilty plea was unknowing, unintelligent, or involuntary, is fatal to his claim that counsel rendered ineffective assistance of counsel when he advised him to plead guilty to he § 924(c) charge. Accordingly, Gunter's claims of actual innocence, ineffective assistance of counsel, and to

the extent he claims his § 924(c) guilty plea was involuntary fail, and relief will be **DENIED** on this claim.

     5.    _Shotgun Barrel Length_

Petitioner also asserts counsel was deficient for allegedly failing to advise him that the government had to prove the length of the shotgun and include the length of the barrel in the indictment in order for him to be convicted of violating § 924(c)(1)(B)(i).

The indictment charged "that on or about September 28, 2005, . . . CORNELL P. GUNTER . . . did knowingly possess a firearm, specifically, a short-barreled shotgun, in furtherance of the drug trafficking crimes set out in Counts Two and Three of this Indictment, . . . in violation of Title 18, United States Code, Section 924(c)(1)(B)(i)." (Criminal Court File No. 3). The § 924(c)(1)(B)(i) Count tracks the language of the statute and therefore, satisfies the Sixth Circuit's holding in _United States v. Harris_, 397 F.3d 404 (6th Cir. 2005) ("[T]he § 924 Firearm-Type Provision mandatory minimum is not binding on a sentencing court unless the type of firearm involved is either admitted by the defendant or charged in the indictment and prove to a jury beyond a reasonable doubt"). Gunter does not cite and the Court's research did not reveal a Sixth Circuit

or Supreme Court case requiring the length of the short-barreled shotgun to be included in the indictment.

Here, the indictment charged the type of firearm by charging Gunter possessed "a short-barreled shotgun" in furtherance of the drug trafficking crimes set out in Counts Two and Three of this Indictment . . ." (Criminal Court File No. 3). Nothing more was required. *See Castillo v. United States*, 530 U.S. 120 (2000) (firearm type in § 924(c) must be charged in the indictment and proved to the jury or admitted by the defendant); *United States v. Brandy*, 239 F.3d 802 (6th Cir. 2001) (use of short-barreled shotgun is an element of the offense that must be established beyond a reasonable doubt). Contrary to Gunter's argument, these cases hold that the "type of firearm," not the length of the barrel, must be charged in the indictment. Accordingly, there was no deficiency on counsel's part in relation the facts charged in the indictment.

Here not only did the indictment specifically charge "a short-barreled shotgun[,]" but Gunter pleaded guilty to possessing a short-barreled shotgun in furtherance of a drug trafficking crime and his plea agreement specified TBI Special Agent Freeman measured the shotgun and found the overall length to be approximately 24 and ½ inches and the barrel length to be approximately 13 and 5/8 inches. Title 18 U.S.C. § 921(a)(6) defines a short-barreled shotgun as a "shotgun having one or more barrels less than eighteen in length and any weapon made from a shotgun (whether by alteration, modification or otherwise) if such a weapon as modified has an overall length of less than twenty-six inches." This undisputed evidence demonstrates counsel was not deficient nor was Gunter prejudiced by his admission that the shotgun he possessed had a barrel length of less than 18 inches, as those facts pertaining to the description of the shotgun are undisputed. Accordingly, this claim fails and relief will be **DENIED**.

## C.    Search Warrant

Gunter's third claim is that, although counsel challenged the validity of the search warrant, he was deficient because he failed to argue the "warrant was void for staleness," asserting that if such an argument had been made, "there is a reasonable probability that the result would have been different i.e., the warrant would have been deemed invalid and the evidence suppressed." (Criminal Court File No. 48, at 16). This argument is wholly without merit.

Gunter's reliance on *United States v. Hython,* 443 F.3d 480 (6th Cir. 2006) is misplaced (Criminal Court File No. 48, at 16-19). In *Hython* "the investigation consisted solely of one modified controlled buy, in which a confidential informant gave pre-recorded buy money to an unidentified female, who was followed to the address in question, observed entering and leaving, and who later delivered a baggie of crack cocaine to the confidential informant." *Id.* At 486. In *Hython* the Sixth Circuit explained that because of the absence of a date or a reference to "recent activity," there was no way to measure the continued existence of probable cause and this deficiency alone was sufficient to render the warrant invalid, without considering any of the affidavit's other weaknesses. *Id.* at 486-87.

In contrast to the *Hython* affidavit, here the affidavit supporting the warrant in Gunter's case stated, *inter alia,* that two monitored controlled buys were conducted with a confidential informant on September 22, 2005, and September 27, 2005, where the agents gave the CS a transmitting device and money with which to purchase drugs and followed him to the meeting place at the time of each sale (Criminal Court File No. 16-1, Application and Affidavit for Search Warrant, No. 31, District Court's Memorandum Adopting the Magistrate Judge's R & R denying the Motion to Suppress). On the second occasion, Gunter was observed by law enforcement officers stopping at his house for two to three minutes while en route to the drug transaction with the informant. The next day i.e.,

September 28, 2005, the affiant submitted the detailed affidavit presenting these facts and dates, the issuing judge signed a warrant authorizing a search of Gunter's residence, and the warrant was executed (Criminal Court File No. 16). Thus, there is no staleness issue.

The inclusion of the exact dates of the controlled buys from Gunter in the affidavit along with the fact the sales had occurred in the preceding week–the second sale within 24 hours prior to the affiant's request for the search warrant and the issuance and execution of the search warrant–sufficiently establishes the information was not stale. Gunter's claim that the "warrant was void for staleness," is frivolous. Accordingly, Gunter has demonstrated neither deficient performance on the part of trial counsel as counsel is not required to pursue frivolous claims, or prejudice; relief will be **DENIED**.

### D.      Failure to Challenge Prior Drug Conviction

Gunter alleges his prior felony drug conviction was invalid because "the State Court acted without jurisdiction" when it adjudicated him guilty of possession of a controlled substance on April 7, 2001 (Criminal Court File No. 48, at 22-23). Gunter maintains that his original term of probation in fact had expired in January 2001, thus the April 2001 action by the state court allegedly was invalid. Thus, Gunter argues, counsel should have contested the validity of his prior felony conviction on that basis. In support of this claim Gunter attached a copy of the computer printout of his docket sheet in the Florida case (Criminal Court File No. 48-4). As the government points out, those documents confirm the information in the PSR regarding this conviction    The Information supports the PSR information that Gunter was arrested on June 1, 1999, after being found in possession of LSD following a traffic stop, from which he attempted to flee (Criminal Court File No. 48-3). In addition, these submissions confirm that Gunter was placed on three years probation on July 15, 1999, as stated in the PSR. The docket sheet reflects that on July 15, 1999,

"Adjudication Withheld" and a three year period of probation was imposed (Criminal Court File No. 48-4, at 5).

The docket sheet reflects that thereafter on July 27, 1999, an affidavit was filed for violation of probation (Criminal Court File No. 48-4, at 5), and an order was filed on the next day withholding adjudication of guilt and placing Gunter on probation. On August 13, 1999, the violation of probation was dismissed, but on June 29, 2000, another affidavit for violation of probation was filed. Subsequently, on April 27, 2001, Gunter admitted he violated probation, his probation was revoked, and he was adjudicated guilty of the violation. On that date he was sentenced to serve the first 6 months in the BCJ and to received credit for 33 days and the balance of his sentenced to be served on probation until July 19, 2003, at which time his probation would terminate. The judgement of guilt and placing Gunter on probation was filed on May 16, 2001. Gunter was subsequently violated again and on August 15, 2001, he admitted he violated probation which resulted in a modification of probation. At that time he was sentenced to serve 90 days in the BCJ with no credit, followed by the balance of probation.

Although Gunter filed a motion for early termination of probation it was denied on September 9, 2002 (Criminal Court File No. 48-4, at 2). Gunter's subsequent January 10, 2003, renewed motion for early termination of probation, however, was granted, terminating his probation effective January 14, 2003.

The docket sheet demonstrates Gunter's argument that his probation had expired in January of 2001 is simply incorrect and refuted by the record. Therefore, Gunter has not demonstrated any meritorious basis for challenging this prior felony drug conviction. Accordingly, counsel was not deficient in failing to object to the prior felony drug conviction and Gunter was not prejudiced by the omission; relief will be **DENIED**.

### E.    Joint Representation

In his final claim, in addition to quoting from the documents the government filed in his federal criminal cases requesting a judicial inquiry to determine whether a conflict existed and the Court's order denying the request, Gunter claims his retained attorney, T. Scott Jones, had an alleged conflict of interest due to his joint representation of him and Clifton Omar Robinson and "prejudice must be presumed." (Criminal Court File No. 48, at 25-30). Gunter argues that if counsel 'had disclosed the basis for the state court's decision to permit joint representation, the Court may well have honored attorney Jones' invitation to conduct 'a limited examination . . . of the two Defendants as to the join representation[.]" (Criminal Court File No. 48). The basis being, that both defendants agreed to testify against Alex Porter in the state case. Contrary to Gunter's allegation, defense counsel did notify the Court that any information either defendant would provide to the government in the state murder case would implicate a same third party (Criminal Court File No. 14, at 4, ¶ 8)

The record reflects that during Gunter's federal criminal proceeding the government filed a motion for judicial inquiry to determine if a conflict of interest existed since Gunter's retained counsel also represented Clifton Omar Robinson in a separate federal criminal case. Although the two cases arose from separate search warrants served approximately eleven months apart and they were not charged together in a conspiracy count, both defendants were indicted for distributing cocaine base crack and the government had proof that these two defendants were very close friends who dealt cocaine together for years. The government argued that based on their proof from cooperating defendants, a conspiracy count involving both Robinson and Gunter could reasonably be charged (Criminal Court File No. 12). In the motion for judicial inquiry, the government also noted that both Robinson and Gunter, as well as four other defendants, had a pending state case charging them with Conspiracy to Commit First Degree Murder and First Degree Murder (Criminal

Court File No. 12).

In response to the government's motion, Gunter, by and through counsel, filed a response that no conflict existed and explained he was also representing both defendants in the state murder case (Criminal Court File No. 14). Specifically, counsel explained that he had contacted the Tennessee Board of Professional Responsibility regarding the joint representation in the murder case and that Gunter and Robinson had entered into a joint defense agreement in that case. Counsel further explained that both defendants consented and requested that he represent them both in their federal cases. In addition, counsel discussed with Gunter and Robinson that the only way either one "could get a break on their federal charges [would be] to plead guilty and seek a Motion for Downward departure through cooperation." (Criminal Court File No. 14, at 4, ¶ 8). Neither Gunter nor Robinson, wished "to testify against the other" (Criminal Court File No. 14, at 4, ¶ 8). In addition, counsel submitted his affidavit, as well as Attorney Joan M. Stallard's affidavit, stating both defendants wanted counsel to represent them in their respective federal cases (Criminal Court File Nos. 14-1, 14-2).

The Court concluded a hearing was not necessary because although the government presented evidence the two defendants are "'very close friends' who allegedly sold cocaine together in the past, there was no allegation or evidence to show Robinson, who had pleaded guilty a couple of months prior to the Court's order, intended to testify against Gunter at his trial (Criminal Court File No. 29).

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). Under the *Cuyler* test, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not

demonstrate prejudice in order to obtain relief." *Id*. at 349-350. In *Mickens v. Taylor*, 535 U.S. 162 (2002), the Supreme Court found that the presumed prejudice standard of *Cuyler v. Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation. *Id*. at 175; *see also Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir., 2007) (The Sixth Circuit "has consistently held that, for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland,* standard applies.").

Gunter alleges counsel had a conflict of interest because he represented his good friend in an unrelated federal case for drugs and guns. Although Gunter claims prejudice must be presumed in this case, as noted above, the Supreme Court has instructed that "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. at 692 (quoting *Cuyler v. Sullivan*, 446 U.S. at 348). The Supreme Court has held that "[r]equiring or permitting a single attorney to represent codefendants . . . is not *per se* violative of constitutional guarantees of effective assistance of counsel." *Holloway v. Arkansas*, 435 U.S. at 482.

This is not a joint representation case as contemplated by *Holloway* or *Sullivan* and it does not appear "that the language of *Sullivan* itself . . . clearly establish[es], or indeed even support[s], such [an] expansive application[,]" *Mickens v. Taylor*, 535 U.S. 162, 174-75 (2002), under the circumstance presented in this case. There is nothing in the record from which the Court can conclude this situation qualified as a multiple representation that gives rise to an actual conflict of interest where prejudice must be presumed. Instead, this is a situation where Gunter has merely alleged a possibility of a conflict of interest arising from counsel representing him, and in a separate federal criminal matter, his good friend with whom, it is alleged, he sold drugs.

The Sixth Circuit has instructed that when a defendant alleges an actual conflict of interest exists, he must make particularized allegations of fact as follows:

> We will not find an actual conflict unless appellants can point to 'specific instances in the record to suggest an actual conflict or impairment of their interests.' . . . Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical.' . . . There is no violation where the conflict is 'irrelevant or merely hypothetical'; there must be an 'actual significant conflict.'

*United States v. Hall*, 200 F.3d 962, 965-66 (6th Cir. 2000) (citations omitted). Thus, "the burden is a difficult one for [a] Petitioner to meet, as he must point to specific instances of actual conflict of interest and not rely on mere speculation, second-guessing, and hindsight." *Williams v. Jones*, 214 Fed. Appx. 521, 526 (6th Cir. 2007), *available at* 2007 WL 143066, *4.

In the instant case, counsel represented two good friends who allegedly sold drugs together but whose federal criminal cases were not related. The defendants were not co-defendants in their federal criminal cases as each was indicted based on the fruits of two different search warrants executed on their respective residences eleven months apart. There is no showing that Robinson's and Gunter's federal criminal cases were related. Gunter must demonstrate counsel "actively represented conflicting interests" and an actual conflict of interest adversely affected counsel's performance. *Wilson v. Parker*, 515 F3d 682, 697-98 (6th Cir. 2008). The conflict must be "real or genuine, as opposed to [ ] hypothetical," *Moss v. United States*, 232 F.3d 445, 467 n. 23 (6th Cir. 2003), and it must have adversely affected "counsel['s] . . . basic strategic decisions." *Id* at 446 (internal punctuation omitted).

Here, Gunter does not point to a specific instance in the record to suggest an actual conflict. Although he implies a conflict existed because they each had information about the other's drug dealing activities, he does not claim that he wished to cooperate with the government against his

friend but was denied the opportunity. Nothing in the record reveals that any alleged shortcomings was as a result of counsel's desire to protect Robinson's interests and was thus "indicative of [counsel's] struggle to serve two masters . . . " *Holloway v. Arkansas,* 435 U.S. at 482 (quoting *Glasser v. United States,* 315 U.S. 60, 75 (1942). Gunter, therefore, has not shown an actual conflict existed due to Mr. Jones's joint representation. Because Gunter has not met his burden of showing "that a conflict of interest actually affected the adequacy of [counsel's] representation" as required by *Cuyler,* prejudice is not presumed.

In sum, Gunter knew counsel was representing both him and his friend, Robinson. Gunter did not raise the alleged conflict of interest issue at trial. Gunter has not shown counsel operated under a conflict of interest that affected the adequacy of counsel's representation. In addition, Gunter has not demonstrate counsel performed deficiently in representing both Gunter and Robinson or that he suffered any prejudice as a result of counsel's dual representation. Accordingly, because Gunter failed to show counsel had a conflict of interest or an adverse effect on counsel's performance, relief will be **DENIED** on Gunters claim that counsel had a conflict of interest.

## V. CONCLUSION

Accordingly, Gunter has failed to establish a plausible claim that would warrant an evidentiary hearing. *See United States v. Tarricone*, 996 F.2d 1414, 1417-18 (2nd Cir. 1993) (noting that to prevail on a motion for hearing, petitioner must establish he has a plausible claim). For the reasons explained above, Gunter's convictions and sentences are not in violation of the Constitution or laws of the United States. Accordingly, Gunter's claims do not entitle him to § 2255 relief, thus his § 2255 motion will be **DENIED WITH PREJUDICE**, and this action will be **DISMISSED** (Criminal Court File No. 47).

A separate judgment order will enter.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE